# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### COGGESHALL LAUNCH CO. v. EARLY.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1918. Rehearing Denied April 1, 1918.)

### No. 2975.

1. SHIPPING ☞209(3)—PETITION FOR LIMITATION OF LIABILITY—ANSWER—SUFFICIENCY.

A petition for limitation of liability, filed by the operator of a vessel, alleged that it was used by petitioner in the business of transporting passengers and freight; that on one of its trips deceased was a passenger on the lower deck, on which deck there was a doorway, through which freight was loaded upon and discharged from the vessel; that, when the doorway was not being used for that purpose, it was closed by a heavy sliding door; that before departure the door was closed, and that on the voyage deceased, either by himself or in company of others, without the consent or knowledge of petitioner, and without any authority to do so, shoved back the sliding door, thus opening the doorway; that it was the custom of the launch company to protect the doorway by placing, about four feet from the floor of the deck, a heavy horizontal bar, but that on the occasion in question, the door having been pushed back without the knowledge of petitioner or any of its employés, the bar was not so placed, and the opening was thus unprotected. The answer of complainant, the mother of deceased, alleged that it was the custom of petitioner to permit the door to remain open when the vessel was on her voyage, and to place across the open space the heavy bar for the purpose of preventing passengers from falling into the water; that deceased, while a regular passenger on the boat, with his fare paid, and while the boat was making one of its regular trips, fell through the open door and was drowned, by reason of the negligence of petitioner in failing to place the bar or other safeguard across the doorway; and that petitioner was negligent in operating the vessel with an insufficient crew. *Held,* that the answer, which set forth that deceased was a regular passenger and, having always been accustomed to see the bar placed across the doorway, relied upon its being so placed for his protection, was sufficient to sustain a decree for the claimant.

2. SHIPPING ☞209(3)—EVIDENCE—SUFFICIENCY.

In a proceeding to limit liability of the operator of a vessel for damages on account of the death of a passenger, who fell through an open doorway and was drowned, evidence *held* to establish the negligence of the operator of the vessel in failing to have the doorway guarded as was

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

its custom; it appearing that the vessel at the time was being operated with a crew short of that required by law.

3. SHIPPING ☞209(3)—EVIDENCE—SUFFICIENCY.
   In a proceeding to limit the liability of the operator of a vessel on account of the death of a passenger, who fell through an open doorway and was drowned, it appearing that the doorway had always previously been protected, evidence *held* not to require or justify a finding of contributory negligence on the part of the passenger.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Petition by the Coggeshall Launch Company, a corporation, for limitation of liability, in which the prosecution of an action brought by Eliza A. Early in the state court to recover damages growing out of the death of her son by reason of the alleged negligence of the Launch Company, operator of a vessel, and the owner, was enjoined. Eliza A. Early thereupon filed her claim in answer to petition for limitation of liability. From a decree limiting the liability, and awarding claimant as damages $5,000 and costs, to be satisfied out of a stipulation given, the Launch Company appeals. Affirmed.

Clarence Coonan, of Eureka, Cal., and Nat Schmulowitz, of San Francisco, Cal., for appellant.

W. Ernest Dickson, of Eureka, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. It appears from the record that the claimant in the present case had brought an action in the superior court of Humboldt county, Cal., to recover damages growing out of the death of her son, George B. Early, by reason of the alleged negligence of the appellant launch company, operator, and the Hammond Lumber Company, owner, of the steam ferryboat Antelope. The launch company and the lumber company thereupon commenced a proceeding in the court below for the limitation of their liability, in which proceeding the prosecution of the action brought in the state court was enjoined, and the plaintiff in that action thereupon filed her claim and answer to the petition for the limitation of liability in the court below, upon the trial of which cause the court entered a decree limiting the liability as prayed for and awarding the claimant as damages $5,000 and costs against the launch company, to be satisfied out of the stipulation that was given in the proceeding. The present appeal is by the launch company from that portion of the decree.

[1] It is insisted on behalf of the appellant that the answer filed by the claimant in support of her claim was fatally defective, but we cannot so regard it. The petition for the limitation of liability alleged, among other things, that the Antelope was at all of the times in question used and employed by the launch company in the business of transporting passengers and freight on Humboldt Bay, between the city of Eureka and the town of Samoa, and that on one of those trips, on the 15th day of January, 1915, the deceased was a passenger on the

lower deck of the boat, on which deck there was a doorway through which freight was loaded upon and discharged from the vessel; that when such doorway was not being used for that purpose it was closed by a heavy sliding door, and that before the departure of the boat from Samoa on the occasion in question the said doorway was closed by drawing to the sliding door, and that on the voyage the deceased, either by himself or in company with others, without the consent or knowledge of the petitioners, or either of them, and without any authority so to do, shoved back said sliding door, thus opening the said doorway; that it was the custom of the launch company to protect the doorway, when open, by placing, about 4 feet from the floor of the deck, a heavy horizontal bar across the opening, fitting the ends thereof into brackets fastened on either upright jamb, and locking the bar by inserting a pin in one end thereof; but that on the occasion in question, the door having been pushed back without the consent or knowledge or authority of the launch company or of any of its employés, the bar was not so placed and the opening was thus unprotected, resulting in the falling through it into the bay of the deceased, and his consequent drowning.

In her answer the claimant, after denying certain of the material allegations of the petition, alleged, among other things, that at the time in question and for a long time prior thereto it was the fixed habit and custom of the petitioners to negligently permit the door to remain open when the vessel was on her voyage, and its like custom to place across the open space the heavy bar for the purpose of preventing its passengers from falling through the open space into the water, and that at the time in question, while a regular passenger on the boat, with his fare paid and while the boat was making one of its regular trips, the deceased fell therefrom into the water, and that the drowning was caused by the negligence of the petitioners in neglecting to place the bar or other safeguard across the open doorway, and that the petitioners were further negligent at the time in question by operating the said boat with an insufficient crew, there then being one man short of the number required by the rules and regulations provided by the United States; that the employé whose duty and custom it had always been to place the said bar as a protection across the said doorway was not then on the boat, and no one had been employed to fill his place; that the deceased had been for a long time prior to the accident a regular passenger on the boat, going daily to and from his work at Samoa to and from his home in Eureka, and had always been accustomed to see the bar across the doorway, and relied upon its being in place for his protection; and that, relying upon the bar being in place as usual and upon the duty of the petitioners as common carriers to place either the said bar in its proper position or other proper protection, and by reason of there being no proper protection at the time in question, and not because of his own negligence, the deceased fell through the open doorway into the waters of the bay and was drowned.

We think the answer sufficient.

[2] On the trial of the case much testimony was given on behalf of both parties, some of which was inconsistent and conflicting, from which, together with other evidence introduced, the court found that

the launch company was guilty of the negligence alleged against it, and that the deceased was not guilty of contributory negligence. After a careful examination of the record, we are unable to hold that the court was wrong in either respect. By the certificate of inspection of the launch, she was required to carry as a complement of her officers and crew one licensed master and pilot, two deck hands, one licensed chief engineer, and one fireman. The case shows that a large number of the many passengers that the boat carried between Eureka and Samoa habitually, and on the occasion in question, traveled on the lower deck, which was entirely inclosed except for the sliding door, which was about 8 feet wide, intended for the taking on and carrying off of freight, which door, however, was often opened by the passengers during the respective trips, and the doorway used by them in leaving the boat. Recognizing the danger necessarily resulting from the opening of the door, the government inspectors, it appears, ordered the launch company to keep in place when the door was opened the bar that has been mentioned; and such, it appears from much of the testimony given on behalf of the claimant, was its invariable custom, except in the instant case.

The negligence of the launch company in that regard we think sufficiently appears from the testimony of the president, Coggeshall. It is undisputed that the deceased was a passenger on the boat that left Samoa for Eureka in the evening of January 15, 1915. The witness referred to was questioned and answered as follows:

"Q. Whose duty was it to close that door on leaving Samoa for Eureka? A. If it is not otherwise closed, it is No. 2 deckhand's duty. We have No. 1 and No. 2 deck hands. Q. On January 15th who was No. 2 deck hand? A. We had no No. 2 deck hand; No. 1 deck hand was sick, and so No. 2 deck hand was acting in his place. Q. Was it No. 1 or No. 2 deck hand's place to close the door? A. No. 2. Q. No. 1 acts as purser and takes the tickets? A. On her main deck; No. 2's business is to look out to see that the cargo port is closed, or the bar is put up. Q. On January 15, 1915, who was No. 2 deck hand? A. Mr. Knudsen. Q. Had it ever been the duty of Nick Muster to close that lower door? A. Not to my knowledge; he is No. 1 deck hand, or purser; his business is to look out for the tickets. No 2 deck hand attends to the freight and things between-decks. Q. After the cargo port is closed, where does the duty of No. 2 deck hand next take him? A. No. 2 is down between-decks. After he has made her safe he goes upon her passenger deck; his next duty is to assist in the disembarkation of the passengers when they get on the Eureka side. Q. After the cargo port is closed, what is the next duty on the boat of No. 1 deckhand? No. 1—he stands by on deck. Both men are preparing, standing by, until such times as they shall go to Eureka; they are subject to any orders of the master of the boat; if he wants a deck hand, he whistles. Q. When you refer to the upper deck, you mean which deck? A. The passenger deck; the between-decks is the freight deck."

There was conflict of testimony as to which one of the two deck hands was charged with the duty of looking after the doorway—the witnesses for the claimant testifying that the one who was absent always put up the bar, whereas the witnesses for the petitioners testified that it was the duty of the other deck hand to do so; but that it was the duty of one or the other to see that the bar was in place when the door was opened we think beyond question, and that the only deck hand on the boat at the time in question was engaged in acting as purser and

taking the tickets of the passengers appears from the testimony of the president of the company. There was also positive testimony on behalf of the claimant that as the boat left Samoa on the evening in question with the deceased, among many other passengers, the door was open and the bar was not up.

We think it clear that there was obvious negligence on the part of the launch company, for it was certainly the duty of the company either to prevent the door from being opened by the passengers, or to have the bar in place to prevent just such accidents as happened in this instance, in the event the door should be opened. That it was the invariable habit of the passengers to open the door from time to time abundantly appears, although it further appears that the company made various efforts to stop such proceeding.

[3] We also agree with the court below that the facts and circumstances of the case were not such as to require or justify a finding of contributory negligence on the part of the deceased. "This contributory negligence," said the learned judge, "is said to have consisted in his assisting in opening the door, and in his failure to observe that the bar was not in place. Contributory negligence is an affirmative defense, is always relative, and the burden of establishing it is upon the party who asserts it. It must be observed in this connection that deceased did not open the door at all at the place where he fell through, so that what he did did not contribute in any degree to the lack of protection at that place occasioned by the absence of the bar. But the opening of the door in any event was not an unlawful act, nor was it one negligent per se, because it was never attended by danger when the bar was in place. Nor can it be said that the mere approach of deceased to the opening already made by others was negligent, as he had every reason to suppose that there was no danger in so doing, for at all times theretofore the bar had been in place. Nor was he bound under all the circumstances to assure himself that the bar was not in place at that time, because he was bound only to the exercise of such care as an ordinary prudent person would have exercised under the circumstances. He could not anticipate, and was not bound to anticipate that the vessel had left Samoa with this doorway unprotected. He, with the other passengers, had become so accustomed to the presence of the bar that he had no reason to suspect that it was not in place, as indeed there is no good reason for its not being in place. From all the surrounding circumstances I am compelled to the belief that, with his attention fixed on the door, which had stuck, he approached it with his side to the doorway, without observing or pausing to observe its unprotected condition, but relying on the fact that the bar had always been in place. It was between 5:30 and 6 o'clock in the evening of January 15th, and, while not yet dark, it was not wholly light; and, though an examination would have disclosed to him the absence of the protecting bar, his failure to make such examination, having in view all of the circumstances, can neither excuse such absence nor charge him with such degree of negligence as to relieve petitioners from responsibility."

The judgment is affirmed.